PEOPLE *v.* LOSINGER.

1. ARREST—PROBABLE CAUSE—ARREST WITHOUT WARRANT.

    Plea of guilty to charge of arson of a dwelling house should not be vacated on ground that defendant was arrested without a warrant, where, although defendant was in custody for 32 hours before the warrant was issued and read to him and he had no counsel, it also appears he did not, at the time of his arrest, want counsel, and that the officers knew the fire was incendiary and had good reason to believe defendant was the only person who might have a motive and an opportunity to set the building on fire (CL 1948, §§ 750.72, 764.15).

2. CRIMINAL LAW—IRREGULAR ARREST—PLEA OF GUILTY.

    Claim that arrest was irregular would not affect trial on charge of arson, where the arrest was followed by a complaint and

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur. Arrest § 25; 14 Am Jur, Criminal Law § 173.
[2] 14 Am Jur, Criminal Law §§ 219, 272.
[2] Unlawfulness of arrest as affecting jurisdiction or power of court to proceed in criminal case.  96 ALR 982.
[3, 4] 14 Am Jur, Criminal Law § 242.
[3, 4] Defendant's plea to indictment or information as waiver of lack of preliminary examination.  116 ALR 550.
[5] 14 Am Jur, Criminal Law §§ 131, 167.
[6] 20 Am Jur, Evidence §§ 559, 994.
[7, 8] 14 Am Jur, Criminal Law § 270.
[9] 4 Am Jur, Arson § 60.
[10] 14 Am Jur, Criminal Law § 269.
[11] 14 Am Jur, Criminal Law § 248.
[12–14] 4 Am Jur, Arson § 14.
[15] 4 Am Jur, Arson § 5.
[15] Burning as element of offense of arson.  1 ALR 1163.
[16] 14 Am Jur, Criminal Law § 286; 25 Am Jur, Habeas Corpus § 33.

warrant, defendant was bound over to the circuit court for trial, and conviction was had upon his plea of guilty, not upon his unsworn but witnessed confession which had been obtained after his arrest but before warrant was issued (CL 1948, § 750.72).

3. SAME—PRELIMINARY EXAMINATION—WAIVER.

The preliminary examination afforded one accused of crime may be waived and the waiver need not be in writing (CL 1948, §§ 766.4, 766.42). .

4. SAME—PLEA OF GUILTY—WAIVER OF EXAMINATION.

Plea of guilty upon arraignment to an information in the circuit court waives a preliminary examination (CL 1948, §§ 766.4, 766.42).

5. SAME—DENIAL OF RIGHTS—ASSISTANCE OF COUNSEL.

Claim by defendant that he was denied constitutional or statutory rights because of the speedy arraignment, plea and sentence, denial of counsel, or failure to have explained to him his rights in the premises *held,* untenable, where defendant had had 20 days after his arrest and before information was filed charging arson of a dwelling in which to consult friends or counsel but evidently did not want counsel (CL 1948, § 750.72).

6. SAME—SENTENCE—EVIDENCE OF PREVIOUS CONVICTIONS.

Consideration by trial judge of public records of defendant's convictions and of his admissions when imposing sentence upon defendant who pleaded guilty to arson of a dwelling house, was proper (CL 1948, § 750.72).

7. SAME—JOURNAL ENTRY.

Claim that journal entry that defendant's plea of guilty to charge of arson of a dwelling was free and voluntary was incorrect *held,* without merit (CL 1948, § 750.72).

8. SAME—PLEA OF GUILTY—ARSON—COERCION—MENTAL CAPACITY.

Defendant's claims that he was coerced into making his plea of guilty to charge of arson of a dwelling and that he did not have the mental capacity to understand what he was doing at that time *held,* without merit (CL 1948, § 750.72).

9. SAME—SENTENCE—ARSON—VALUE OF DWELLING.

Sentence of from 5 to 20 years upon charge of arson of a dwelling house was within the pertinent statute, notwithstanding the dwelling house was assessed at only $100, the length of the sentence not being dependent upon the value

of the building burned, as contended by defendant (CL 1948, § 750.72).

10. SAME—PLEA OF GUILTY—OATH.

The plea of guilty to a charge of crime, made in open court, need not be sworn to.

11. SAME—RETURN OF EXAMINING MAGISTRATE.

Proper certification by an examining magistrate of his return to the circuit court need not be sworn to.

12. ARSON—DWELLING HOUSE—TEMPORARY ABSENCE OF OWNER.

It is arson to burn a dwelling house during a temporary absence of its owner (CL 1948, § 750.72).

13. SAME—DWELLING HOUSE—DEFINITION.

The term "dwelling house," as used in statute prescribing penalty for arson of a dwelling house, includes any house intended to be occupied as a residence, and would include any such residence, even though not occupied by the complaining witness at the time of the burning (CL 1948, § 750.-72).

14. SAME—COTTAGE—DWELLING HOUSE—OCCUPANCY.

Cottage or cabin, used by owner at intervals, which contained equipment, fuel, food and facilities of a furnished dwelling house and to which the owner planned to go when he retired constituted a dwelling house within the statute prescribing penalty for arson of a dwelling house (CL 1948, § 750.62).

15. SAME—DWELLING HOUSE—PARTIAL DESTRUCTION OF CONTENTS—DAMAGE TO STRUCTURES.

Fire set by defendant which destroyed only a part of the contents, slightly damaged the dwelling house and completely destroyed a 1-car garage next to the dwelling, constituted a burning contemplated by statute prescribing penalty for arson of a dwelling house, as the statute does not provide that the entire property must be destroyed (CL 1948, § 750.72).

16. CRIMINAL LAW—ARSON—DELAYED MOTION TO VACATE PLEA OF GUILTY AND SENTENCE—HABEAS CORPUS.

Motion for leave to file delayed motion to vacate defendant's plea of guilty and sentence imposed and petition for habeas corpus by defendant who had been convicted and committed for arson of a dwelling house held, properly denied (CL 1948, § 750.72).

Appeal from Montcalm; McDonald (Archie D.), J., presiding. Submitted October 11, 1951. (Docket No. 87, Calendar No. 44,792.) Decided December 3, 1951. Certiorari denied by Supreme Court of the United States March 24, 1952.

Glen Earl Losinger was convicted of burning a dwelling. Motion for new trial denied. Affirmed.

Glen Earl Losinger, in pro. per.

Frank G. Millard, Attorney General, Edmund E. Shepherd, Solicitor General, and Daniel J. O'Hara and Harry W. Jackson, Assistants Attorney General, for the people.

BUTZEL, J. On May 10, 1945, in the circuit court for the county of Montcalm, before Judge Paul R. Cash, defendant Glen Earl Losinger pleaded guilty in open court to an information charging that on or about March 20, 1945, he did then and there set fire to and burn a dwelling house located in Reynolds township, Montcalm county, Michigan, the property of one Fred I. Chase. At the time of the arraignment and plea, defendant in reply to direct questions propounded by the judge categorically stated that he was guilty, that his plea was voluntary, that no one had promised him anything, and that he had made a mistake and wanted to pay the penalty. After a recess, the prosecutor moved for sentence. The judge thereupon stated that he had talked with defendant and denied his request to be let off on probation; that he told defendant that he had offered nothing to recommend probation; that defendant had caused the sheriff's department, as well as other sheriffs' departments, much trouble; that he had once been put on probation and that did not do any good; that he had served some time in the army jail. He also told him that he was fortunate

that a supplemental information had not been filed against him as a second offender, so as to subject him to an additional term of imprisonment. He sentenced him to a minimum term of 5 years and a maximum of 20 years. The maximum term for arson of a dwelling house was in accordance with section 72 of the penal code, PA 1931, No 328 (CL 1948, § 750.72 [Stat Ann § 28.267]). The maximum term for arson in the case of real property other than a dwelling house is 10 years. Penal code, PA 1931, No 328, § 73 (CL 1948, § 750.73 [Stat Ann § 28.268]).

This is a brief but complete résumé of the entire stenographic record of the circuit court proceedings at the time of the plea and sentence. Other facts developed at the hearings on the various motions will appear in our further discussion of the case. Successive motions for leave to file delayed motions to vacate defendant's plea of guilty and the sentence imposed and granting a new trial and a petition for habeas corpus were all denied. These and the proceedings that followed are incorporated in and made part of a voluminous document that constitutes the record filed in this Court.

It might be said at the outset that the defendant has shown considerable ability in acting without counsel. Notwithstanding very serious shortcomings and infractions of the law and very unfortunate behavioristic tendencies, defendant has had a very hard life. He has been very industrious and frugal, had for a time some standing in the community, and enlisted the interest of the solicitor-general to the extent that he made a motion that defendant be given another opportunity to present an additional motion to set aside the plea of guilty and vacate judgment and sentence and have counsel appointed for him, as the question of whether the building that was set on fire was a dwelling house within the meaning of the statute had never been passed on in

this State. Defendant also raised other questions.

Judge Archie D. McDonald, in denying the motion, found that there were really only 3 reasons and grounds claimed, *viz.:* Whether defendant's plea of guilty was free and voluntary; whether it was a burning within the meaning of the statute; and whether the building burned was a dwelling house. Upon denial of the motion, leave to appeal to this Court was granted upon the recommendation of the solicitor general, who, while willing to afford defendant an opportunity to present his claims of error, contends that they are without merit.

Defendant claims that his plea of guilty should be vacated on the ground that he was arrested without warrant. It is true that the warrant was not issued and read to him until very late the day following his arrest and after he had been in custody 32 hours during which time he had made a complete confession which was taken down stenographically, transcribed and signed by defendant, and witnessed by 4 parties. It was not sworn to by defendant. The conviction was based on defendant's plea of guilty in open court, not on the confession, which was not introduced in evidence. At the time of the hearing on the first motion that was denied, in a supporting affidavit, defendant claims he was "without the benefit of counsel" and was otherwise not properly informed of his rights in the premises and had permitted himself to be talked or tricked into a plea of guilty for a crime which he did not commit. Defendant makes the strange statement that he considered it was legitimate for him to "lie" when not under oath, but that he would not do this when under oath. However, on the hearing on a later motion, defendant stated after being sworn that he had made up his mind to plead guilty, that he wanted it to appear he was guilty. With only a

$100 tax assessment on the entire property, he felt that it was the best thing to do. He further stated:

"If I beat the rap it would have cost me quite a lot. I don't have money to hire an attorney; I spent a lot of cash for other things and I don't have money for an attorney."

He evidently did not want an attorney appointed for him as he further added, "a State attorney is worse than none."

Defendant stresses the fact that he was arrested without warrant or without valid reason therefor, and he was kept an unreasonable length of time before warrant was issued. On the other hand, it was brought out that, when they made the arrest, the officers knew that the fire was incendiary and believed that defendant was the only person who might have a motive and the opportunity to set the building on fire; that there were footprints from defendant's home to the property burned; that the officers thus held reasonable grounds to believe a felony had been committed, and that the defendant had committed it. Code of criminal procedure, PA 1927, No 175, ch 4, § 15 (CL 1948, § 764.15 [Stat Ann § 28.874]). *People* v. *Orlando,* 305 Mich 686; *People* v. *Bommarito,* 309 Mich 139. As the arrest was followed by a complaint and warrant and defendant was bound over to the circuit court for trial, at which he pleaded guilty, even if there were merit to defendant's claim that the arrest was irregular, it would not affect the trial. *People* v. *Miller,* 235 Mich 340; *In re Van Dyke,* 276 Mich 32.

Defendant further claims that he did not have a preliminary examination before a magistrate, as provided for by CL 1948, § 766.4 (Stat Ann § 28.922). He waived this examination, as shown by the return of the examining magistrate. CL 1948, § 767.42 (Stat Ann § 28.982), provides that no

information should be filed until the accused shall have had a preliminary examination as provided by law, but it further states, "unless such person shall waive his rights to such examination." Defendant makes no showing that there was not a waiver as stated in the return of the examining magistrate. The statute does not provide that such waiver must be in writing. Further, a plea of guilty upon arraignment to an information in the circuit court waives a preliminary examination. *People* v. *Tate,* 315 Mich 76; *In re Reno,* 321 Mich 497.

Defendant further claims that he was denied some constitutional or statutory rights because of the speedy arraignment, plea and sentence, denial of counsel, or failure to have explained to him his rights in the premises. Twenty days did elapse between the time defendant was bound over to the circuit court for trial, and the return of the examining magistrate and the information were filed but shortly before the arraignment at which defendant pleaded guilty. Defendant had ample time during the 20 days in which to consult friends or counsel. He evidently did not want any counsel.

Defendant further claims that prior to the sentence being pronounced the trial judge obtained from police officers certain information regarding defendant's record. There was no stenographic record introduced, if there was one, as to what took place during the recess before the sentence. In a typewritten statement of facts signed by defendant in support of a motion previously filed on April 17, 1946, and accompanying it, he stated that he did tell the judge that he had been arrested or paid a fine once each in Ionia, Kent and Mecosta counties. On the hearing of the instant motion, defendant admitted that he had been found guilty of breaking and entering, a felony. He, however, claims that he believed it was only a misdemeanor

and that he had gone into a vacant building that was open and he thought he had only been charged with larceny from a vacant building. He states he was fined a small amount but was placed on probation for 3 years, and subsequently an additional 2 years. Undoubtedly the judge was familiar with the official records when he stated that defendant could have been charged with a second felony by supplemental information and given an additional sentence. Defendant in 1916, when a soldier in the United States army, was convicted of violating certain articles of war and sentenced to a dishonorable discharge, forfeiture of pay and confinement at hard labor for 3 years which the reviewing authority directed to be the United States penitentiary at Leavenworth, Kansas. See *In re Losinger*, 329 Mich 47, where defendant raised an entirely different question. The latter case was decided in this Court a number of years prior to the conviction in the instant case, but it was quite evident that the judge knew the facts when he referred to them in sentencing defendant. There was no error in the judge's considering public records and defendant's admissions.

Defendant further claims that the journal entries are incorrect. We find no merit to this claim. Evidently defendant means that the statement is incorrect in stating that defendant's plea of guilty was free and voluntary.

Defendant claims that at the time of the arrest he had very serious troubles with various members of his family, including his wife; that he was distracted and despondent and did not fully realize what he was doing; that he had no money to prepare a proper defense; that his nerves were shattered; that if he pleaded guilty he would go to prison and study; and that if he did not get a sentence he would go some place else and work to pull himself together; that there was no place he wanted to go to, did not

know what to do, so he just made up a story and pleaded guilty. He claims, however, that he was tricked and lured into making a confession which preceded the issuance of a warrant. He claims that a Mr. Steinmetz had shown him a Federal statute and told him that the fire was within the Manistee Forest Reserve and to form his own conclusions as to who he was. An officer of the State police corroborated the statement in regard to the statement that Steinmetz had made, that the property was within the boundaries of the Manistee Forest Reserve, but there were no Federal statutes at the police headquarters and he did not hear Steinmetz tell defendant that the penalty under Federal law would be 40 years. The police officer stated that he did not hear Steinmetz make any promise of leniency, nor would he have any authority to make such a promise. Defendant claims that he told Steinmetz that if the sentence would not be over a year, he would make up a story and plead guilty and get probation, and that Steinmetz definitely spoke up and stated he would go to the judge and recommend probation if defendant would help clear up the fire. Defendant, however, admits that Steinmetz, after a short interval, told defendant that he was not the judge and could not guarantee what the judge would do, and if the latter thought that the confession was given because of the promise, he would not accept the plea of guilty, but would find him guilty and it would be mandatory for him to give a sentence of from 10 to 30 years. There is no corroborative proof as to Steinmetz making this statement. His name was indorsed on the information but when defendant pleaded guilty, no witnesses were called. Defendant describes Steinmetz as a special investigator for the State Fire Prevention Bureau, but defendant was led to believe he was a Federal detective.

Judge Cash, at the hearing on defendant's motion for leave to file delayed motion for a new trial, held October 31, 1945, stated that immediately after defendant's plea of guilty, as hereinbefore set forth, and prior to sentence, he distinctly told defendant that he would not place him on probation, and that if he wanted to withdraw his plea of guilty, he would permit him to do so. Defendant did not ask to withdraw it.

The court, on the hearing of the present motion, found there was no substance to defendant's claims of coercion. The record does not support defendant's claim that he did not have the mental capacity to understand what he was doing. Through his own mental processes defendant makes some kind of claim that he is entitled to a specific performance of an alleged promise that he would get off on probation or with a short term. There is no merit at all to this claim.

Defendant further states that the Chase property was assessed at only $100 and for this reason he thought he would be sentenced to a short term. There is no legal basis for this claim. The maximum term for burning a building that is a dwelling house, whatever may be its value, is 20 years. The judge was bound to follow the statute.

Defendant further claims that he was not sworn prior to his plea of guilty. The plea was made on arraignment in open court and an oath was not necessary. Defendant further claims that the examining magistrate did not swear to the return filed in the circuit court. Proper certification by a magistrate need not be sworn to.

Defendant's chief objection is that the building burned was not a dwelling house within the meaning of the statute. The building is described as a cottage but more frequently as a cabin. Mr. Chase stated that he had built a foundation in the rear of

the cabin on which he some day expected to build a house. It is true that it was a one-story building and was not partitioned off. The building itself appears, from the photograph, to have brick or composition walls and roof; however, it was described in the proceedings as having walls made of a brick roll. It had an air-tight wooden floor built over a cement foundation. Mr. Chase testified that it contained 3 beds with inner-spring mattresses and box springs, with bedding, curtains on the windows and between the beds. It contained some furniture, a kerosene cooking stove, cooking utensils, groceries and canned milk in the cupboards, some personal possessions, clothing, a heating stove and fuel and all equipment necessary so that occupants could move in and immediately have the facilities of a furnished dwelling house. Mr. Chase testified that he lived there during the hunting season the previous fall and had been there every month of the year, including the winter months, of each year, but was not certain that he was there after December 1, 1941, and before the fire. He, however, had never lived there for 90 days in succession because of his work in Lansing, but he planned to use the cottage when he retired. He had used the premises as a home, had slept in it, had lived in it steadily for periods of 3 weeks at a time and in addition had been there over night on many other occasions. He further testified that it was occupied during the fishing season and during the summer of 1942 he was there practically all the time and that his uncle had lived there a part of a previous winter. A 1-car garage next to the building was completely destroyed by the fire in question.

The term "dwelling house" has never been defined by this Court but the meaning appears very plain. In *People* v. *Handley,* 93 Mich 46, the Court held that the crime of burning a dwelling house was an offense

against a habitation and not against fee title, but the Court based its decision on the fact that the person charged in the information to be the owner never dwelt in or occupied the building. That is far different from the instant case. It has been held, however, that it was arson to burn a dwelling house during a temporary absence of its owner. *Stupetski* v. *Transatlantic Fire Insurance Co.*, 43 Mich 373 (38 Am Rep 195). Section 72 of the penal code, *supra,* provides for punishment of any person who willingly and maliciously burns any dwelling house, either occupied or unoccupied, whether owned by himself or another.

In *State* v. *Blair,* 112 W Va 655 (166 SE 369, 85 ALR 424), a somewhat similar situation arose although the size of the house is not stated in the opinion. It was used by the owner and his family as a place of residence during vacation time and on week ends, particularly in summer. It was held that it was a dwelling house though temporarily unoccupied. In 2 Gillespie, Michigan Criminal Law & Procedure, § 819, it is stated:

"The term 'dwelling house' has a broader meaning than a house that is actually occupied as such. It means any house intended to be occupied as a residence, and would include any such residence, even though not occupied by the complaining witness at the time of the burning."

We hold that the building was a dwelling house within the meaning of the statute. Mr. Chase used it frequently, even though at intervals, and he intended to return to make it his home when he retired. Defendant further claims that inasmuch as the fire did not destroy the property but only part of its contents, there was not such a burning as contemplated by the statute. It slightly damaged the build-

ing. The statute does not provide that the entire property must be destroyed.

Other questions are also raised but they are so trivial and without any merit whatsoever, that they do not even require further discussion.

Defendant further complains of the severity of the sentence in being given the maximum of 20 years for the burning of a dwelling house which was assessed at $100 for tax purposes. The maximum sentence was such as is prescribed by statute. It is unnecessary to discuss defendant's litigation with, and intense dislike for, Mr. Chase, nor defendant's statement immediately after the fire that he expected to be blamed for it, and many other incidents set forth in the lengthy record. Defendant has already served the minimum of 5 years and, if he is entitled to further relief, it must come from either the parole board or the governor.

We have examined the record with meticulous care and come to the conclusion that the judge properly denied defendant's motion. We find no error.

REID, C. J., and BOYLES, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.