In the Matter of HAROLD FLORANCE, Appellant, against EDWARD J. DONOVAN et al., as Commissioners of Correction of the State of New York, Respondents.

Third Department, December 22, 1953.

*James D. Benson* for appellant.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Herman N. Harcourt* and *J. Bruce MacDonald* of counsel), for respondents.

FOSTER, P. J. This is an appeal from an order of the Supreme Court which dismissed a petition for an order, pursuant to article 78 of the Civil Practice Act, to review a determination of respondents, who are Commissioners of Correction of the State of New York. The determination sought to be reviewed was that the crime of which petitioner had been convicted by a court-martial would have been a felony if committed in this State; and that petitioner, as a delinquent parolee, should be required to serve the remainder of a maximum sentence for a previous felony committed in this State. The authority for the determination was section 219 of the Correction Law.

That section provided in part (prior to amendt. by L. 1945, ch. 678, § 4, eff. July 1, 1945): "If any prisoner while on parole from a state prison or from the Elmira reformatory shall commit a crime under the laws of another state government or country which if committed within this state would be a felony, and if he shall be convicted of such crime, he shall upon being returned to this state be compelled to serve in state prison the portion remaining of the maximum term of the sentence on which he was released on parole from the time of such release on parole until the expiration of such maximum."

It appears without dispute that in January, 1946, petitioner was on parole from State prison, to which he had been sentenced by the Chemung County Court for the crime of robbery, second degree. He was then in the United States Army and serving in Japan. There he was tried and convicted by a general court-martial of a violation of the 93d Article of War, under these specifications:

" 1. In that, Private Harold E. Florance, Headquarters Company, Army Service Command O, APO 315, did, at Kobe, Japan, on or about 10 December 1945, by force and violence and by putting him in fear, feloniously take, steal and carry away from the person of Yukichi Tamura, 1197 Yen, value of about $79.80, and one watch and chain, value of about $10.00, all the property of said Yukichi Tamura, total value of about $89.80.

" 2. In that Private Harold E. Florance, Headquarters Company, Army Service Command, APO 315, did, at Kobe, Japan, on or about 10 December, 1945, by force and violence and by putting him in fear, feloniously take, steal and carry away from the person of G. Ueda, 860 Yen, value of about $57.33, all the property of said G. Ueda.''

After conviction by the court-martial petitioner was sentenced to confinement at hard labor for five years. Upon his release from that sentence he was returned to Sing Sing prison as a parole violator, and charged with delinquent time for the unexpired part of the sentence imposed by the Chemung County Court for the felony he committed in this State.

Petitioner contends it was not the intent of the Legislature that section 219 of the Correction Law should apply to court-martial convictions. We can find no persuasive reason to support this contention. An army court-martial is a competent and duly constituted tribunal under the laws of the United States. The Army of the United States neither exists nor operates in a vacuum, and must of necessity be held a branch of the Federal Government. The Articles of War, which govern and control those in the military service, were enacted by Congress (U. S. Code, tit. 10, § 1565).

The fact that procedure under a court-martial differs from that followed in Federal and State courts does not detract from the force or competency of its judgments. This principle has been recognized in determining that a person convicted of a felonious offense by a court-martial was a subsequent offender within the meaning of section 1941 of the Penal Law (*People ex rel. Stewart* v. *Wilson*, 257 App. Div. 555, motion for leave to appeal denied 281 N. Y. 888). There is no logical basis for refusing to apply the same principle to the Correction Law. Every argument against the use of court-martial convictions under the Correction Law as to parolees would apply with equal force against their use under the Penal Law as to increased punishment for subsequent felony offenders.

The Legislature must have been well aware of this when section 219 of the Correction Law was enacted. The absence

therefore of a comma in that section (prior to amendt. by L. 1945, ch. 678) between the words "state" and "government" was, in our opinion, merely an oversight and of no significance, even though a comma did appear between the corresponding words in section 1941 of the Penal Law. Appellant's argument is that the absence of a comma in the correction statute indicates a legislative intent to restrict its application to other States and countries. That portion of section 219 of the Correction Law with which we are dealing was added by chapter 426 of the Laws of 1931, and, contrary to appellant's argument, its legislative history clearly shows that its purpose was to bring the section into conformity with sections 1941 and 1942 of the Penal Law.

Petitioner's second contention is that he was not convicted of a crime by court-martial which if committed in the State of New York would be a felony. This contention is based chiefly on the language of the 93d Article of War, which names a number of crimes, not all of which would be felonies in this State. It includes robbery but does not define it. Appellant argues that it cannot be told from the court-martial record whether or not he was convicted of a felony.

Since the Article of War under which he was convicted is not definitive it is proper to look to the specifications in the charge. The decision in *People* v. *Olah* (300 N. Y. 96) does not forbid such an inquiry in such a case (see, also, *People* v. *Love,* 305 N. Y. 722). The specifications here charged robbery in the language of the Federal Criminal Code then in effect (U. S. Code, tit. 18, § 463). They also purported to state the exact value of the articles taken, but this was surplusage so far as the essential elements of robbery are concerned. It was the apparent intent of Congress in enacting the 93d Article of War to empower the military authorities to enforce the Federal Criminal Code in the case of a crime committed by one subject to military law outside the territorial limits of the United States (*Collins* v. *McDonald,* 258 U. S. 416). For all intents and purposes such a crime is a crime against the Government of the United States. Hence we think it clear that appellant was convicted by a court-martial of the crime of robbery, which would have been a felony in this State.

The order should be affirmed, without costs.

BERGAN, COON, HALPERN and IMRIE, JJ., concur.

Order affirmed, without costs. [See *post,* p. 748.]